IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BOBBY JONES,                          )
                                      )
        Plaintiff,                    )
                                      )        CIVIL ACTION NO.
v.                                    )
                                      )        CV-99-J-0456-S
WILLIAM J. HENDERSON,                 )
POSTMASTER GENERAL,                   )
UNITED STATES POSTAL SERVICE,         )
                                      )
        Defendant.                    )

## MEMORANDUM OPINION

Currently pending before the court is the Defendant's Motion to Partially Dismiss and

for Summary Judgment under Fed. R. Civ. P. 56, (doc. 22) and a brief in support of its

motion ("Def. Brief"), to which the plaintiff filed an opposition ("Pl. Brief"). Thereafter,

defendant filed a reply to plaintiff's opposition ("Def. Reply").[1]  Both parties have filed

evidentiary submissions in support of their respective positions.

## PROCEDURAL HISTORY

Plaintiff commenced this action on February 25, 1999 by filing a complaint alleging

that the defendant discriminated against him on the basis of his race and sex in violation of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., ("Title

---

[1]On July 13, 2000, the court received the Plaintiff's Motion to Strike Defendant's Reply
Brief because the Defendant's Reply Brief was filed outside of the three day requirement as
instructed by Exhibit A to this Court's September 30, 1999 Scheduling Order. The plaintiff's
July 13, 2000 Motion to Strike was granted by separate Order, and the Defendant's Reply Brief
was accordingly not considered in the Court's determination.

*30*

VII"), and age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621,

*et seq.*, ("ADEA"), as evidenced by his non-selection for a promotion within the United

States Postal Service. Upon consideration of the pleadings, memoranda of the parties and

evidentiary submissions, the court concludes that the motion for summary judgment is due

to be granted as no genuine issue of material fact remain and the defendant is entitled to

judgment in its favor as a matter of law.

## FACTUAL BACKGROUND

In the light most favorable to the plaintiff, the facts of this case are as follows: The

plaintiff worked for defendant, the United States Postal Service, from 1966 through 1998,

at which time he retired.[2] Pl. Depo. at 6, 27, 34-35. During his 29 years of employment with

defendant, the plaintiff had received several promotions and, by January of 1996, his grade

level was an EAS-20. Plaintiff's application of 1/23/96, Exh. 5 to Roth affidavit.

In January 1996, defendant posted Vacancy Announcement Number 019601,

soliciting applications for the Manager, Operations Programs Support ("MOPS") position.

*See* Exh. 1 to Roth affidavit. The MOPS application process required the applicants to

submit a Form 991, Application for Promotion, plus a separate statement of qualifications

---

[2]Plaintiff first testified in his deposition that he voluntarily retired (Pl. Depo. at 27), but later testified that if he had been given the promotion in question, that "for the most part, I don't really believe that I would have" retired. Pl. depo. at 34-35. Plaintiff then states in his declaration that he would not have retired if he had been awarded the promotion in question. Pl. declaration at 18. The court notes that plaintiff's motivation for retiring is not material to the question of defendant's alleged discrimination.

for each of the ten knowledge, skill or ability ("KSA") requirements. *Id.* The Form 991 for KSA statements recommended that the applicants use a situation/task, action, result ("STAR") format for describing the KSA qualifications. *See e.g.* plaintiff's application of 1/23/96, Exh. 5 to Roth affidavit.

Plaintiff and five other postal employees submitted applications for the MOPS position. Roth affidavit at ¶ 3. The individual responsible for selecting the replacement for the MOPS position, Walter Moon, District Manager, Customer Service and Sales, requested a review committee to aid him in the selection process. Moon depo. at 17, Exh. 9 to Roth affidavit. Moon had no input as to who would comprise the committee, rather he was notified as to who would be on the committee. Moon depo. at 12.

The committee members primarily used the information provided on the applicants' Form 991 to determine the best qualified candidates. Barrett depo. at 104-5; Johnson depo. at 120-22; Jones depo. at 20, 22, 26. The committee members individually reviewed the applications, and then compared their individual evaluations in an effort to select the most qualified individuals for recommendation to Moon. Barrett depo. at 92-94; Johnson depo. at 119; Jones depo. at 22, 25-26. After reviewing the 991 forms and rating the applicants on a matrix identifying each applicant's KSA qualifications as "minimal," "adequate," or "superior," the review committee submitted the names of the individuals with the most "superior" ratings to Moon: Carole Koehler, Don Dulaney, and Paula Prochazka. Barrett

depo. at 94, 100; Exh. 10, 11 and 12 to Roth affidavit.  Moon ultimately selected Carole Koehler for the MOPS position (Moon Depo. at 11).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of  the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e).  In meeting this

burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11ᵗʰ Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11ᵗʰ Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

## LEGAL ANALYSIS

### Title VII claim

The plaintiff alleges he was not promoted in January 1996 due to race and sex discrimination, in violation of Title VII. Because the plaintiff has offered no direct proof of such discrimination, the evidence of discrimination before this court is wholly circumstantial in nature. When a plaintiff provides only circumstantial evidence in support of his claim, the Supreme Court has fashioned a three-prong test for evaluating the evidence. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253, 67 L. Ed. 2d 207, 101 S. Ct. 1089, 1093-1094 (1981); *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir.1991).

First, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S. Ct. at 1824. In a "failure to promote case" such as this, the plaintiff meets his prima facie burden of proof by establishing (1) he is a member of the protected class; (2) he was qualified for the position for which he applied; (3) he was not selected for the position; and (4) the selected individuals included individuals outside of the protected class.[3] *McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S. Ct. at 1824; *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996); *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir.1998). Establishment of a prima facie case creates

---

[3]This standard applies to age discrimination claims as well as sex and race claims.

a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997).

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education*, 99 F.3d 1078, 1083 (11th Cir. 1996). The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058, 117 L. Ed. 2d 106, 112 S. Ct. 935 (1992)(quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590. 596 (11th Cir.1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine*, 450 U.S. at 255, 101 S. Ct. at 1094 and n. 10.[4] The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083. While the preliminary burdens alternate between the plaintiff and the defendant, the ultimate burden of proving that the employer's action was intentionally discriminatory  lies with the plaintiff. *Reeves v.*

---

[4]The disappearance of the presumption does not compel summary judgment in favor of a defendant. The ultimate question remains the same: whether the plaintiff can persuade the trier of fact that she has been the victim of intentional discrimination. *See Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir. 1994).

*Sanderson Plumbing,* -- U.S. –, 120 S.Ct. 2097, 2106 (2000); citing *Burdine*, 450 U.S. at 253.

The plaintiff, in an attempt to satisfy this burden, must be given "an opportunity to prove by

a preponderance of the evidence that the legitimate reasons offered by the defendant were

not its true reasons, but were a pretext for discrimination." *Reeves*, 120 S.Ct. at 2106; citing

*Burdine*, 450 U.S. at 253; *see also St. Mary's Honor Center*, 509 U.S. 502, 507-508 (1993).

A plaintiff may prove pretext and discredit the employer's proffered reasons by showing:

"(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not

actually motivate the employment decision, or (3) that they were insufficient to motivate the

employment decision." *Walker v. Nationsbank of Fla.*, 53 F.3d 1548, 1564 (11ᵗʰ Cir. 1995).

In this case, the plaintiff has made out a prima facie case of race and sex

discrimination, as well as age discrimination (discussed *infra*). Plaintiff has shown (i) he is

an African-American male over the age of 40; (ii) he was qualified for the MOPS position;

(iii) he was not selected for the MOPS position; and (iv) a younger, white female was

awarded the MOPS position. The burden thus shifts to the defendant to provide a legitimate,

non-discriminatory reason for its failure to promote the plaintiff.

The defendant's articulated reason for not promoting the plaintiff was that plaintiff

was not the best qualified candidate. This is a legitimate, non-discriminatory reason for not

promoting the plaintiff. *Harris*, 99 F.3d at 1084 (stating that the defendants in Title VII

cases may prove as an affirmative defense that they would have reached the same

employment decision even in the absence of bias); citing *Price Waterhouse v. Hopkins*, 490

U.S. 228, 246, 109 S. Ct. 1775, 1788, 104 L. Ed. 2d 268 (1989). The defendant has provided substantial evidence supporting its articulated explanation, including the testimony of the Paul T. Barrett, the applications of all the applicants, and the Review Committee's findings, including the matrix evaluation of the applicants' qualifications.

The plaintiff alleges that the defendant's explanation is pretextual, but offers scant evidence in support of his argument. Defendant asserts that because plaintiff failed to utilize the recommended format for completing his application, his qualifications were not as effectively displayed as were those of the applicants who did utilize the STARs format. Plaintiff alleges this assertion by defendant demonstrates this pretext. Def. brief at 3, 11; Pl. brief at 7-8, 17, 19. Plaintiff claims "I was never instructed that I was required to use the STAR system or format for completing an application." Declaration of plaintiff at ¶ 25. Plaintiff argues Barrett testified "[t]he only document produced by the defendant referencing the STAR system is a document provided solely to those members of the Review Committees" and that "Barrett is unaware of how applicants are instructed on the STAR system." Pl. brief at 8, citing Barrett depo. at 182, 183. However, the court finds that the plaintiff's own 991 application states at the top of each KSA qualification page the following:

> "Applicant position requirements are enumerated on the vacancy announcement, enter the requirement in the space provided and explain your qualifications in reference to the requirement. **A situation/task-action-result format for describing qualifications is recommended.**"

9

Plaintiff's PS Form 991, submitted as exhibit 5 to Roth affidavit. (emphasis added).

Furthermore, each of the applicants received a superior rating for KSA-1. *See* Exh. 10 to Roth affidavit; Pl. depo. at 14-15. Plaintiff, Jacobs and Taylor were rated adequate on the remaining KSA requirements. *Id*. The three candidates recommended for the position, Dulaney, Prochazka, and Koehler each received superior ratings on other KSA's as well. *See* Exh. 10 to Roth affidavit, plaintiff's depo. at 14-15.

The defendant presented substantial evidence that the plaintiff's qualifications were inferior to those of Carole Koehler, the selected individual, and also inferior to the others recommended by the committee for the position. Johnson testified "[t]he applications of the names that were submitted to the selecting official were more complete, and they fully demonstrated what their abilities were on their applications." Johnson depo. at 130. Barrett testified that plaintiff did not "demonstrate on his 991 that he had managed managers at the level that he needed to be. So basically his 991 did not address the elements, and so he wasn't qualified." Barrett depo. at 173. When asked to show what he meant by the stars and guidelines, Barrett compared Koehler's 991 with the plaintiff's 991 for KSA-4, "Ability to manage a budget and control operating costs within budget allocations" and explained that Koehler's 991 demonstrated her qualifications with respect to KSA-4, while also stating that plaintiff "[d]id not fulfill the guidelines. There wasn't a star, and it's impossible for the review committee to make a determination if he's qualified. In this case he's not qualified". Barrett depo. at 175-176. The defendant provided legitimate and objective explanations,

10

which the plaintiff wholly failed to demonstrate were unworthy of credence. *See Reeves*, 120 S.Ct. at 2106, citing *Burdine*, 450 U.S. 256, 101 S.Ct. 1089.

Plaintiff further disputes the KSA ratings for KSA-2, alleging that it should have been a "superior" rating instead of "adequate" because he believed he had "demonstrated superior knowledge in that field." Pl. depo. at 16. Plaintiff does not dispute the validity of his remaining KSA qualification ratings, nor the ratings of the other five applicants. Pl. depo. at 14-16. Even assuming plaintiff's rating for KSA-2 was "superior" and assuming he had been recommended for final review by the selecting official, Koehler would still have one more "superior" KSA rating than plaintiff. *See* Exh. 10 to Roth affidavit. Plaintiff does not rebut the qualification deficiencies offered by the defendant nor argue that he was even as qualified as the three recommended applicants. Plaintiff also does not address the fact that, of all the applicants, he held the lowest EAS grade.[5] *See* Exh. 3-8 to Roth affidavit. *See Walker*, 158 F.3d at 1193 ("a plaintiff may be forced to address relative qualifications if the defendant presents them to rebut the plaintiff's presumption of discrimination"). Plaintiff has not provided any evidence that he was equally or more qualified than Koehler with regard to the KSA qualification requirements.[6] In fact, the testimony before this court is that each of the

---

[5]The applicants' EAS levels were as follows: Dulaney, EAS-22; Jacobs, EAS-22; Prochazka, EAS-21, Koehler, EAS-22; Taylor, EAS-21; and Plaintiff, EAS-20 (Roth affidavit, Exh. 3-8).

[6]Plaintiff instead contends that he was more qualified than the three recommended applicants based solely on his experience in that department. Pl. depo. at 18-19. Plaintiff stated that he "worked in that department for -- prior to that time for approximately ten years ... [a]nd

11

applicants was qualified for the position in question, thus, the committee chose the three individuals they believed to be more qualified than the other applicants.  Johnson depo. at 110.

The plaintiff also argues that Carole Koehler was "pre-selected" for the MOPS position.  Complaint at ¶ 11; Pl. depo. at 16-17.  The court finds no evidence to support this allegation.  Plaintiff alleges that "defendant 'detailed' her into a similar position . . . so that she would have the necessary experience to put on her application to the Review Committee." Pl. brief at 5, n. 8.  However, the plaintiff admits that he had also been previously detailed in the MOPS position, thus giving Koehler no advantage in this regard. See Pl. depo. at 17-18.  Furthermore, James Jones testified that "having served in the position doesn't mean ... that ... one is better than the other just having served in the position." J. Jones depo. at 55.

The plaintiff further alleges that the defendant's failure to place an African-American on the Review Committee is evidence of pretext.  Pl. brief at 9.  The plaintiff cites to the Postal Guidelines which indicate that "in assembling the review committee, the diversity of the work force should be taken into consideration." Pl. brief at 22.  Taking this assertion as true, the court notes that the selecting official, Walter Moon, is an African-American. Johnson depo. at 41.  Moon acknowledges that he could have assessed the entire applicant pool himself.  Moon depo. at 17.  Furthermore, because the diversity make-up of the

_____

... gained quite a bit of knowledge and experience in that department." Pl. depo. at 19.

committee has no bearing on the relative qualifications of the applicants, the plaintiff's claim is insufficient to prove pretext for the legitimate explanation that the selected applicant was more qualified.

The plaintiff further alleges that the Review Committee's failure to submit five applications to the selecting official is evidence of pretext. Pl. brief at 9-11, 21-22. Plaintiff cites the postal guidelines which state that a review committee should recommend "at least five applicants for levels EAS-20 and above (whenever possible) to the Selecting Official." Exh. 14 to Barrett depo. However, Barrett, Johnson and Moon each testified that because of the small number of applicants, the procedure followed by the committee was consistent with postal regulations. Barrett depo. at 139, Johnson depo. at 105. Moon depo. at 30.

Moon testified he "would have been required under law to give all names" submitted to him "due consideration". Moon depo. at 25. This court, however, cannot find from this statement by the selecting official that the plaintiff would have gotten the position in question if his name had been submitted to Moon. Moon's testimony was that "... I would have to look at who his competition would have been. The only way I could say I would have no problem [appointing the plaintiff] would have been if he had been the only one. But if there's competition, if he had been one of the three or one of the five, then I certainly would have given him very serious consideration." Moon depo. at 60-61. This statement, however, in no way indicates that the plaintiff would have ultimately been selected for the promotion

13

by Moon; and the plaintiff only contends that he "would have a good chance at it (sic) of demonstrating my abilities to him". Pl. depo. at 30.

Plaintiff makes numerous further arguments in an attempt to rebut the defendant's evidence that the plaintiff was not selected for the position in question because he was not the most qualified candidate. The court has carefully considered each of these contentions and finds that none of these contentions, alone or when considered in combination with each other, create evidence sufficient that a reasonable jury could find intentional discrimination on the part of the selecting official or the review committee. *See Anderson*, 477 U.S. at 248.

### The ADEA claim

The *McDonnell Douglas v. Green* three prong analysis, *supra*, has been applied to age discrimination cases as well as those of sex and race. *See Reeves,* 120 S.Ct. at 2105; *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir.1998). The plaintiff argues a younger individual was selected rather than him. *See* Complaint at ¶ 21. However, all of the other applicants were younger than the plaintiff, so regardless of who was selected for the position, if it was not plaintiff, the selectee would be younger.[7]

In order to establish a prima facie case of age discrimination, the plaintiff must establish that he is in a protected age class, that he was qualified for the position or another position and he must also produce circumstantial or direct evidence from which a reasonable

---

[7] The court notes that Koehler was not the youngest of the applicants. Three of the other applicants were younger than Koehler, and all but one were at least 40 years old. Pl. brief at 3.

fact finder could conclude the employer tended to discriminate based on age. *Maddow v. Proctor & Gamble*, 107 F.3d 846, 851 (11th Cir.1997). While the plaintiff did establish that a younger individual filled the position, the defendant presented ample evidence to support that the candidate it selected was more qualified for this position. *See supra.* The plaintiff has presented no evidence to rebut this explanation other than the fact that he is older than the person selected. This is wholly insufficient for the plaintiff to proceed to a jury on this claim. This court finds that "no rational fact finder could conclude that the action was discriminatory". *Reeves*, 120 S.Ct. at 2109.

## CONCLUSION

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendants' motion for summary judgment on all counts of the plaintiff's complaint is hereby **GRANTED**. The claims are **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the 27 day of July, 2000.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

15